UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANJUANA ROMERO, Personal
Representative of the Estate of
VANESSA ROMERO, Deceased,

      Plaintiff,

v.

WAYNE COUNTY FAMILY
INDEPENDENCE AGENCY, PATRICIA
WALKER, and YVETTE SPEARS,

      Defendants.
_____/

Case No. 03-74942

HONORABLE DENISE PAGE HOOD

**MEMORANDUM OPINION & ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Sanjuana Romero brings the present action on behalf of her deceased daughter, Vanessa Romero. On October 9, 2000, Vanessa Romero died by aspirating on her vomit while in the care of foster parents. Plaintiff's Complaint seeks damages for alleged violations of her daughter's constitutional rights pursuant to 42 U.S.C. § 1983, as well as additional state law claims.

This matter is before the Court on Defendants' Motion for Summary Judgment and/or Dismissal, filed September 3, 2004. Plaintiff responded on September 29, 2004, and oral argument was heard on November 10, 2004. In their Motion, Defendants advance the following arguments: (1) the Wayne County Family Independence Agency ("FIA") is immune under the Eleventh Amendment of the Constitution; (2) Plaintiff's Complaint fails to set forth which constitutional rights have been allegedly violated; and (3) the individual Defendants are also entitled to immunity. For the reasons set forth below, the Court grants Defendants' Motion.

## II.     STATEMENT OF FACTS

The underlying facts surrounding the tragic death of 18-month old Vanessa Romero are not disputed by the parties. Vanessa was born prematurely on March 18, 1999. (Compl. at 2.) She weighed approximately 2.4 pounds at birth. (Id.) After spending the first 51 days of her life in the hospital, Vanessa was diagnosed with abnormal gastro-esophageal reflux and hyaline membrane disease.[1] Vanessa returned to the emergency room on several occasions due to wheezing and chronic vomiting after feeding. (Id.) On September 7, 2000, Vanessa was diagnosed with gastro-esophageal reflux disease.[2]

During an extended hospital stay in late-September through early-October of 2000, an ophthalmologist detected bilateral retinal hemorrhages in Vanessa. (Id. at 3.) On September 30, 2000, pediatrician Dr. Mary Church filed a 3200 Form with the FIA based on the ophthalmologist's findings and the discovery of a remote subdural hematoma in Vanessa. (Id.) The discharge summary from the hospital lists a remote diffuse axonal injury within Vanessa's right parietal lobe, and notes that blood was found within her basal cisterns. (Defs.' Mot. for Summ. J., Ex. E.) These findings and "varying stories from the parents" were deemed consistent with shaken baby syndrome and child abuse. (Id.) On September 30, 2000, a probate court ordered Vanessa to be placed in

---

[1] Hyaline membrane disease, also known as respiratory distress syndrome, is a condition common in premature babies. The disease causes newborns to need extra oxygen and may require the child to be aided with breathing normally. *See* <http://www.healthsystem.virginia.edu/UVaHealth/peds_hrnewborn/hmd.cfm> (visited June 9, 2005).

[2] Gastro-esophageal reflux disease causes the backward flow of stomach contents into the esophagus, or food pipe. It is caused by an immature muscle at the entrance of the stomach which allows food to move back up into the esophagus and throat. *See* <http://www.sph.unc.edu/oce/phnceac/babyguide/gereflux.pdf> (visited June 9, 2005).

foster care upon release from the hospital.

Vanessa was discharged in good condition on October 6, 2000, a Friday. (Compl. at 3.) Upon discharge, the FIA placed Vanessa in foster case pursuant to the probate court's order. Defendant Patricia Walker, a foster care worker, and Defendant Yvette Spears, a children's protective services worker, were the FIA employees assigned to work on Vanessa's case and aided in her placement in foster care. (Id.) Defendant Spears' involvement was limited to informing Defendant Walker where Vanessa was to be placed, as decided by a different FIA employee. (Defs.' Mot. at 3.) On October 6, 2000, Defendant Walker transported Vanessa from the hospital to the home of Richard and Catherine Patton. (Id.) Neither Defendant Walker nor Defendant Spears was involved in determining where Vanessa would be placed. (Id.)

Upon arriving at the foster home, Defendant Walker presented to Mr. Patton Vanessa's discharge summary and post-discharge instructions from the hospital. (Id. at 5.) Defendant Walker also provided Mr. Patton with a prescription for Vanessa's medication, a consent to emergency treatment card, a letter allowing the Pattons to secure medical care for Vanessa pending receipt of a Medicaid card, and a document specifying health care expectations. (Id.) Mr. Patton signed a receipt acknowledging receipt of these materials. (Id.)

During the course of the weekend following Vanessa's placement in the Patton home, Vanessa continually cried, repeatedly vomited, and experienced a seizure. (Pl.'s Resp. at 3.) The Pattons repeatedly attempted to contact Defendant Walker for guidance on how to handle Vanessa's situation and to request Vanessa be removed from their home. Defendant Walker did not respond until that Monday, October 9, 2000, whereupon she provided minimal assistance. (Id.) Plaintiff alleges Defendant Spears failed to provide any assistance during this time, but does not state whether

the Pattons attempted to contact her.  (Id.)

The same day – three days after being placed in foster care – Vanessa vomited while having a seizure.  She aspirated on her vomit while strapped in a car seat.  Vanessa was later pronounced dead following several attempts to resuscitate her at St. Joseph's Hospital.  (Compl. at 4.)

Defendants note an autopsy performed by the Oakland County Medical Examiner, leading to a report listing "Blunt Force Trauma" as Vanessa's cause of death.  (Defs.' Mot. at 2.)  Plaintiff points out that a revised autopsy report declaring the cause of Vanessa's death undeterminable was filed on April 12, 2001.  (Pl.'s Resp. at 3.)  Plaintiff filed suit on June 20, 2002, alleging deliberate indifference to Vanessa's medical needs in violation of the United States Constitution and gross negligence under Michigan law.

## III.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

4

>showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV.     LAW & ANALYSIS

### A.     Wayne County Family Independence Agency

Defendants allege the FIA is an agency of the state of Michigan, and is thereby entitled to immunity under the Eleventh Amendment. (Defs.' Mot. at 6.) States and their agencies are immune from suit by the Eleventh Amendment unless the state waives its immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). Plaintiff concedes the FIA is not properly subject to suit in this instance because it is an agency of the state of Michigan, and the state has not consented to be sued. (Pl.'s Resp. at 6.) Defendant FIA is accordingly dismissed from this action.

### B.     Individual Defendants

#### i.     Federal Law Claims

Plaintiff alleges Defendants Walker and Spears were deliberately indifferent to Vanessa's medical needs. (Pl.'s Resp. at 6-7.) Plaintiff further alleges these Defendants were "grossly negligent in the handling, care, treatment, and placement into foster care of plaintiff's decedent Vanessa Romero." (Pl.'s Resp. at 7.) In support of her allegations, Plaintiff claims Defendant Walker and Defendant Spears "placed Vanessa into the foster home of Catherine and Richard Patton without a medical history or passport of her condition, despite the child having just been released from the hospital and despite her history of health problems . . . ." (Id.) Defendants clarify that a "medical passport" is simply "a form that is to be completed in 30 days and placed in [Vanessa's] file." (Defs.' Mot. at 5.) Defendants also contend that Defendant Walker provided Mr. Patton all of the information regarding Vanessa's medical condition available to her as of Friday, October 6, 2000. (Defs.' Mot. at 11.) That information demonstrated Vanessa was in good condition when placed in the Patton home. (Id.) Defendants move for dismissal as "[n]owhere does plaintiff's complaint or the facts indicate any defendant either knew of or disregarded an excessive risk to Vanessa's health . . . . Vanessa's death . . . is something that could have happened any where, any time." (Id. at 11-12.)

When an individual suffers injury while in the state's custody, he or she may properly assert a constitutional violation when the injury results from the state's deliberate indifference to the risk of such injury occurring. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Though most often claimed by prisoners, other individuals in the custody of the state may also file suit. *See Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996) (regarding patient at state mental hospital); *Lintz v. Skipski*, 25 F.3d 304, 306 (6th Cir. 1994) (children in state-regulated foster home); *Heflin v. Steward County*, 958

6

F.2d 709, 713-14 (6th Cir. 1990) (pretrial detainees).

The Sixth Circuit has held that children placed in foster homes regulated by the state have a substantive due process right to personal safety. *See Meador v. Cabinet for Human Servs.*, 902 F.2d 474 (6th Cir. 1990). *Meador* considered an action filed on behalf of children sexually abused in a foster home after placement by the Cabinet for Human Services, the Kentucky equivalent of the FIA. *Id.* The biological father of the children alleged a violation of 42 U.S.C. § 1983 on the basis of claims that the agency worker assigned to the case knew of a previous report of sexual abuse at the same foster home, yet refused to act on it. *Id.* The plaintiff also alleged the agency worker received a report that the Meador children were at risk if they stayed in the home. *Id.* On the basis of these allegations, the plaintiff charged the defendants with deliberate indifference to "the known risk of injury to the Meador children, in violation of their due process rights." *Id.* at 475. In reversing the district court, *Meador* held that "due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes . . . . [T]he complaint adequately alleges that the Cabinet and the state officials were 'deliberately indifferent' to the reports of abuse in the Douglas Foster Home in violation of the Meador children's right to safety." *Id.* at 476. The panel concluded that "due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes." *Id.*

Though *Meador* extended state liability for deliberate indifference to the foster home setting, it did not delineate the specific standard of conduct necessary to establish a violation. *Lintz*, 25 F.3d at 305. Other circuits have followed the Sixth Circuits' reasoning in *Meador*, and mirrored the "deliberate indifference" standard used in prisoner cases. *See, e.g., Norfleet v. Arkansas Dept. of Human Servs.*, 989 F.2d 289 (8th Cir. 1993); *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846 (7th Cir.

7

1990).

The deliberate indifference standard contains both an objective and subjective element. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The objective element requires a sufficiently serious medical need, while the subjective requires a sufficiently culpable state of mind on the part of the state actor. *Id.* "A negligent or inadvertent failure to provide adequate medical care is insufficient to state a section 1983 claim because such a failure is not an 'unnecessary and wanton infliction of pain,' and is not 'repugnant to the conscience of mankind.'" *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976)). "[T]he standard for deliberate indifference is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Walker*, 293 F.3d at 1037. A plaintiff must show the defendants actually knew of "a substantial risk of harm" and "acted or failed to act in disregard of that risk." *Id.*

In the present context, Vanessa's medical needs were sufficiently serious under the deliberate indifference standard. Vanessa required close monitoring on account of her various diagnosed conditions.

With respect to the culpable states of mind of Defendant Walker and Defendant Spears, the factual differences between this case and *Meador* are plain. There is no allegation that Vanessa's death resulted from any action or inaction from the Pattons. Nor is there any fact in the evidence to suggest the Pattons were unfit – as a general matter – to be foster parents. Defendant Walker clearly stated she provided Mr. Patton with all of the documentation she had when she delivered Vanessa. Plaintiff does not dispute this assertion. Defendant Walker's failure to provide a medical passport stems from the fact that the form had not yet been completed; indeed, 27 days remained in

which the medical passport could have been timely finished and put into Vanessa's file. Plaintiff has not demonstrated an inadequacy rising to the level of deliberate indifference in either of these individual Defendants' actions in providing medical information to the Pattons upon placing Vanessa in the foster home.

Plaintiff alleges several additional facts she claims are capable of supporting a finding that Defendants had the requisite state of mind for deliberate indifference. First, Plaintiff points to "reservations" expressed by Defendant Walker about Vanessa's placement with the Pattons. (Pl.'s Resp. at 9-10.) In particular, Defendant Walker stated her reservations were based on the fact that the Pattons were unable to pick up Vanessa from the hospital themselves, and that both Mr. and Mrs. Patton were employed outside of the home during the weekdays. (Id.) In their absence, one of their parents took care of Vanessa and the other foster children. (Defs.' Mot. at 5.) Defendant Walker discussed the matter with her supervisor, who assured her that Vanessa's placement was proper. (Pl.'s Resp. at 9-10.) Defendant Walker's supervisor is not named as a Defendant in this case. None of these facts, viewed as they must be, in the light most favorable to Plaintiff, can demonstrate Defendant Walker or Defendant Spears acted with a deliberately indifferent state of mind.

Plaintiff alleges Defendants violated Michigan law by placing Vanessa in a non-Spanish speaking home. (Compl. at 5.) As previously stated, neither of the individual Defendants in this case were responsible for selecting the Pattons as foster parents. It should also be noted that Defendants state Mr. Patton communicated to Defendant Walker that he studied Spanish for nine semesters. (Defs.' Mot. at 5.) This assertion is uncontested by Plaintiff.

Lastly, Plaintiff points to the failure of Defendant Walker and Defendant Spears to respond to phone messages left at their office over the weekend until Monday, October 9, 2000. This fact

9

does not make either Defendant deliberately indifferent. Defendant Walker provided the Pattons with the means to obtain medical care for Vanessa, should the need arise. Upon actually receiving the message from the Pattons, Defendant Walker promptly returned the call. Plaintiff has not presented any evidence, nor is there any evidence in the record before the Court, that FIA employees are required to check their messages over the weekend. Though Defendant Walker may not have been of as much assistance to the Pattons as they would have hoped, there is nothing in the record to demonstrate that Defendant Walker was deliberately indifferent because she did not check her office for messages over the weekend.

The Court finds Plaintiff has not demonstrated a genuine issue of material fact regarding deliberate indifference on the part of Defendant Walker or Defendant Spears. Plaintiff's federal claims against the individual Defendants are dismissed.

### ii.     State Law Claims

Federal courts have jurisdiction over non-federal claims, as provided by 28 U.S.C. § 1367. Section 1367 provides:

> (a) Except as provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all the other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
> * * *
> (c) The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -
> > (1) the claim raises a novel or complex issue of State law;
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> > (3) the district court has dismissed all claims over which it has original jurisdiction; or
> > (4) in exceptional circumstances, there are other compelling reasons

for declining jurisdiction.

The "same case or controversy" is established if the claims arise out of a common nucleus of operative facts such that one would expect them to be tried in one proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). The court can, in its discretion, remand matters not within its original jurisdiction. 28 U.S.C. §1441(c).

"It has long been understood that if the federal claims that are the basis for jurisdiction are eliminated from the case, the federal court has discretion whether to exercise pendent jurisdiction over the remaining state-law claims or to decline to exercise that jurisdiction." *13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction, 3567.1 (2d ed. Supp. 2001) (footnote omitted).* Accordingly, this Court has the discretion to exercise supplemental jurisdiction over Plaintiff's state law discrimination claims.

"The Sixth Circuit holds that generally, if the federal claims are dismissed before trial, the state claims should be dismissed as well." *Barber v. Pepsi-Cola Personnel, Inc.*, 78 F. Supp. 2d 683, 695 (W.D. Mich. 1999) (citing *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

As the Court has dismissed Plaintiff's federal claims, Plaintiff's remaining state law claims are also dismissed.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment and/or Dismissal **[Docket No. 11, filed September 3, 2005]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED with prejudice.

               /s/ Denise Page Hood
              DENISE PAGE HOOD
              United States District Judge

DATED:   June 30, 2005